1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VALERIE E. CAMPBELL,

        Petitioner,

  v.

GLORIA HENRY,

        Respondent.

_____/

No. C 06-02225 CRB

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

     On March 22, 2001, following a jury trial in California state court, Petitioner Valerie Campbell was convicted of first degree murder and two counts of attempted premeditated murder.  Respondent's ("Resp.") Ex. 1 (dkt. 53-2), Clerk's Transcript at ("CT") 252–56.[1] The jury also found that Campbell was armed with a firearm during the offenses.  Id.  On July 19, 2001, the state trial court sentenced Campbell to 25 years to life for murder, with two consecutive sentences for the attempted murders.  CT 261–62.  Campbell petitions for a writ of habeas corpus arguing that she was deprived of her constitutional right to due process.  Petition for a Writ of Habeas Corpus ( "Petition" or "Pet.") (dkt. 1).  The Court finds that the state court decisions rejecting Campbell's claims were neither contrary to clearly established federal law nor based on an unreasonable determination of the facts.  See 28 U.S.C.

---

[1] For brevity, all future references to "Resp. Ex. 1, CT" are denoted simply as "CT" and are followed by the cited page number.  For example, page 198 of the Clerk's Transcript will be cited as "CT 198."

§ 2254(d).  For the reasons set forth below, the Court hereby DENIES Campbell's request for federal habeas relief.

# I.   BACKGROUND

The California Court of Appeal summarized the facts of the case as follows:

> [Campbell] was convicted of murdering Andrea Johnson and of attempting to murder Jewell Sutton and Michael Ward. . . .
>
> Johnson and Sutton lived together for about 17 years.  Both women knew [Campbell] and her boyfriend, Carl Sampson.  All four individuals used drugs regularly.
>
> In August 1991, Johnson and Sutton decided to move from Oakland to Union City.  As part of the move, Sutton placed all her possessions in a storage facility.  Sutton called the storage facility about a month later to ask about a billing matter.  The facility told Sutton that her property had already been removed.  After receiving a description of the persons who took the property, Sutton believed [Campbell] and Sampson were responsible.  She contacted the police.
>
> [Campbell] and Sampson called Sutton about a week later.  They were angry Sutton had called the police.  Sampson threatened to "break both of [Sutton's] legs" while [Campbell] told Sutton, "[i]f you fuck people, you get fucked."
>
> Johnson and Sutton were afraid.  They contacted the FBI, telling an agent that if anything happened to them, [Campbell] and Sampson would probably be responsible.  Johnson also contacted her brother, Michael Ward, and asked him to obtain a gun.
>
> On December 14, 1991, Johnson and Sutton drove to Claude Lovett's house on Isabella Street in Oakland.  [Campbell] lived across the street from Lovett, and [Campbell] had warned Johnson and Sutton they should never be seen on Isabella Street.  Hoping to avoid a confrontation, Johnson and Sutton parked their car around a corner.  Johnson and Sutton spent the day with Lovett drinking and taking cocaine.
>
> When Johnson and Sutton decided to leave, they discovered someone had slashed the tires on their car.  They reinflated the tires and went back to Lovett's house.  Later that day, they were joined by a man named Clinton Dupree.
>
> Meanwhile, Sampson had learned that Johnson and Sutton were at Lovett's house.  He called an acquaintance, Chet Hunter, and told him to go to Lovett's house and "shake [the women] up," i.e., harm them physically. Hunter arrived at the door of Lovett's house and tried to get in. Dupree refused to admit him.
>
> Johnson and Sutton decided to leave.  When they returned to their car, they discovered their tires were flat again.  Concerned they were being "set up," the women went back to Lovett's house.  Johnson called her brother, Ward, and asked him to pick them up.  Johnson told Ward he should bring his gun.
>
> After Ward arrived at Lovett's house, he waited in the living room as Johnson got ready to leave.  Before they were able to leave, they heard a loud knock at the door.  Lovett went to answer it.  Sampson and [Campbell] angrily demanded to be let in.  Lovett told Sampson to calm down and be quiet, admonishing him, "you can't do that in here." [Campbell] replied, "Why are you trying to protect those bitches."  Lovett answered, "Shoot me if you want to, if that's what you want to do?"

United States District Court
For the Northern District of California

2

Johnson recognized the voices and said, "That's Carl." She obtained the gun from Ward and went to the back of the house.

[Campbell] walked into the living room followed by Sampson. [Campbell] was dressed in a full-length fur coat. Sampson was wearing a long leather jacket. Sampson was angry. He told everyone in the room, "Don't nobody move."

Sutton asked Sampson why he was bothering everyone. Sampson replied, "Because you called the police on us, bitch." Sutton saw that [Campbell] was holding a gun by her side and that Sampson had an Uzi.

[Campbell] noticed Johnson in the rear of the house. She told Sampson, "Here she is, Carl." Sampson told Johnson, "You don't know who you're fucking with, bitch." A gun battle ensued. Sampson fired his Uzi at Johnson. Johnson fired back. Sampson then turned and sprayed the room with bullets. Ward dove behind a television. He was shot in the arm. Sutton and Dupree also hid behind the television. Sutton was shot in the foot.

Sutton heard Johnson say, "I'm not dead yet, Carl . . . . I'm going to get you." Sutton then heard six more shots. They sounded different from the shots that came from Sampson's Uzi or from Johnson's gun. [Campbell] and Sampson then fled. The police were notified.

Johnson died from the wounds she sustained. The bullets recovered from her body were not fired from an Uzi.

Sampson was arrested and convicted of second degree murder. [Campbell] evaded arrest for nine years by living throughout the country under different aliases. She was finally arrested in February 2000 at a trailer park in Arizona.

Based on these facts, an information was filed charging [Campbell] [with] one count of murder, ([Cal. Penal Code] § 187) and two counts of attempted premeditated murder (§§ 187, 664). The information also alleged [Campbell] was armed with a firearm when committing the offenses within the meaning of section 12022, subdivision (a)(1), and that [Campbell] personally used a firearm when committing the murder within the meaning of section 12022.5.

The case proceeded to trial where the prosecution presented the evidence set forth above. [Campbell] testified on her own behalf. She admitted going to Lovett's house on the night in question with Sampson and a man named Bus. However, [Campbell] claimed Sampson had forced her to go. She denied she was armed, and she denied she had shot Johnson.

The jury hearing this evidence convicted [Campbell] on one count of murder and two counts of attempted premeditated murder. The jury also found [Campbell] was armed with a firearm when committing the offenses, but concluded she had not personally used a firearm.

Resp. Ex. 2 (dkt. 53-2) at 1–4; People v. Campbell, No. A095686, 2003 WL 464068, at *1–2 (Cal. Ct. App. Feb. 25, 2003).

On March 22, 2001, the jury convicted Campbell of first degree murder and two counts of attempted premeditated murder. CT 252–56. The jury also found that Campbell was armed with a firearm during all three offenses. Id. On July 19, 2001, the trial court sentenced Campbell to 25 years to life for murder, with two consecutive sentences for the attempted murders. CT 261–62. The California Court of Appeal affirmed the judgment in an

3

United States District Court
For the Northern District of California

unpublished decision on February 25, 2003.  Resp. Ex. 2 (dkt. 53-2) at 12; Campbell, WL 464068, at *7.  The California Supreme Court denied review on June 11, 2003.  Pet. at 45 of 46;[2] Resp. Ex. 4 (dkt. 53-2).

On September 12, 2003, the Alameda County Superior Court denied Campbell's petition for writ of habeas corpus.[3]  See Resp. Ex. 11 (dkt. 95-1).  The Alameda County Superior Court denied Campbell's subsequent petition, filed September 24, 2003, later that same day.  Resp. Exs. 13–14 (dkt. 95-1).  On October 20, 2003, Campbell filed a habeas corpus petition in the California Court of Appeal, which was denied on October 24, 2003.  Pet. at 44 of 46; Resp. Exs. 15–16 (dkt. 95-1).  Campbell's second habeas corpus petition, filed September 21, 2001 in the Alameda County Superior Court, was denied on September 29, 2004.  Pet. at 33–34 of 46; Resp. Ex. 5 (dkt. 53-2).  That court reaffirmed its denial on October 26, 2004 after Campbell filed additional claims.  Id.  On January 3, 2005, Campbell filed a habeas corpus petition at the California Court of Appeal, which was denied on January 7, 2005.  Pet. at 41 of 46; Resp. Ex. 7 (dkt. 53-2).  The California Supreme Court then summarily denied her habeas corpus petition on February 8, 2006.  Pet. at 42 of 46.

Campbell filled the instant federal habeas petition, raising 25 claims for relief, on March 28, 2006.  Pet. at 1 of 7.  On October 28, 2008, this Court appointed counsel for Campbell.  Court Order Appointing Counsel (dkt. 40); see also Order Appointing CJA Attorney (dkt. 47).  The Court granted the government's motion to dismiss the petition as untimely, and the Ninth Circuit reversed and remanded for further proceedings on August 13, 2010.  See Campbell v. Henry, 614 F.3d 1056 (9th Cir. 2010).  Pursuant to those proceedings, Campbell conceded that most of her claims were procedurally barred, but maintained that Claims 3, 5, 7, and 20 should be excused under Martinez v. Ryan, 132 S. Ct.

---

[2] The page numbering in Campbell's Petition restarts at several points.  To disambiguate page numbers, the Court includes the last consecutively numbered page of the grouping in which the pincite falls.

[3] Campbell mailed a letter dated June 1, 2003 to the Solano County Clerk's Office, requesting assistance in obtaining relief from her conviction and sentence.  See Resp. Ex. 11 (dkt. 95-1).  The Alameda County Superior Court deemed this letter "an Ex Parte Petition for Writ of Habeas Corpus."  See Resp. Ex. 12 (dkt. 95-1).

United States District Court
For the Northern District of California

1309 (2012).  Petitioner's Traverse and Request for Evidentiary Hearing (dkt. 94) at 1, 6–9.

The Court presumed that Campbell also wished to pursue Claims 22, 23, and 25.  Order

Directing Briefing at 1.  In the interests of judicial efficiency, the Court opted not to resolve

the procedural default question, and instead ordered briefing on the merits of Claims 3, 5, 7,

20, 22, 23, and 25.[4]  Id. at 2.

## II.     STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this

Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in violation

of the Constitution or laws or treaties of the United States."  28 U.S.C § 2254(a).  AEDPA

sets a high bar for habeas relief in federal court.  Harrington v. Richter, 562 U.S. 86, 105

(2011).  The writ may not be granted with respect to any claim that was adjudicated on the

merits in state court unless the state court's adjudication of the claim, "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412–13 (2000).  Under the

"'unreasonable application' clause, [] a federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court

---

[4] The Ninth Circuit permits review on the merits in lieu of resolving concerns of procedural default where, as here, interests in judicial efficiency warrant such review.  See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than merits issues . . . so it may well make sense in some instances to proceed on the merits if the result will be the same."); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

1  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

2  application must also be unreasonable." Id. at 411.

3       A federal court making the "unreasonable application" inquiry should ask whether the

4  state court's application of clearly established federal law was "objectively unreasonable."

5  Id. at 409.  The only definitive source of clearly established federal law under 28 U.S.C.

6  § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of

7  the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

8  While circuit law may be "persuasive authority" for purposes of determining whether a state

9  court decision is an unreasonable application of Supreme Court precedent, only the Supreme

10  Court's holdings are binding on the state courts and only those holdings must be

11  "reasonably" applied. Clark, 331 F.3d at 1069.  "It is settled that a federal habeas court may

12  overturn a state court's application of federal law only if it is so erroneous that 'there is no

13  possibility fairminded jurists could disagree that the state court's decision conflicts with [the

14  Supreme Court's] precedents.'" Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (citing

15  Richter, 562 U.S. at 101).

16       State courts are presumed to know and follow the law. See, e.g., Parker v. Dugger,

17  498 U.S. 308, 314–16 (1991); Clark v. Arnold, 769 F.3d 711, 727 (9th Cir. 2014) (citing

18  Walton v. Arizona, 497 U.S. 639, 653 (1990) (overruled on other grounds)).  AEDPA

19  deference applies where the state court reached the merits of a habeas petitioner's claims.

20  Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the

21  state court has denied relief, it may be presumed that the state court adjudicated the claim on

22  the merits in the absence of any indication or state-law procedural principles to the

23  contrary."); James v. Ryan, 733 F.3d 911, 915 (9th Cir. 2013) (quoting Johnson v. Williams,

24  133 S. Ct. 1088, 1096 (2013)) (alternations in original) (noting, "'[w]hen a state court rejects

25  a federal claim without expressly addressing that claim,' there is, as in Richter, a rebuttable

26  presumption 'that the federal claim was adjudicated on the merits.'")); see also id. at 916

27  ("Williams instructs us to give state courts the benefit of the doubt when the basis for their

28  holdings is unclear.").  Here, the California Court of Appeal denied several of Campbell's

claims on the merits.  See Campbell, 2003 WL 464068, at *3–7.  The Court applies due deference under AEDPA to those state court decisions.

Finally, where the state court erred under § 2254(d), a federal court must consider whether any constitutional error at trial "had substantial and injurious effect or influence in determining the jury's verdict," because petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citations omitted); see also Deck v. Jenkins, 768 F.3d 1015, 1022 (9th Cir. 2014).

## III.    DISCUSSION

In Claims 3, 5, 7, 20, 22, and 26, Campbell maintains she received constitutionally defective representation from trial and appellate counsel.[5]  She alleges additional due process violations in Claims 23, 24, and 25, which concern improper jury instruction, conviction based on insufficient evidence, and cumulative error, respectively.  The Court addresses these two sets of claims separately.

### A.    Ineffective Assistance of Counsel

To prevail on a Sixth Amendment ineffective assistance of counsel ("IAC") claim, a petitioner must satisfy the two-pronged Strickland standard.  First, the petitioner must establish that counsel's performance was deficient—that is, that the attorney made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Second, the petitioner must show that the deficient performance resulted in prejudice, meaning that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

The Strickland analysis is complete in and of itself; there is no need for additional harmless error review pursuant to Brecht.  Moreover, the Strickland framework, which applies to both trial and appellate counsel, Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010) (citing Smith v. Robbins, 528 U.S. 259, 285 (2000)), is "clearly established Federal

---

[5] Only Claim 22 pertains to appellate counsel.  Pet. at 133–34 of 148.

United States District Court
For the Northern District of California

law, as determined by the Supreme Court of the United States" for the purposes of the 28 U.S.C. § 2254(d) analysis, see Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).

To review whether counsel's performance was constitutionally deficient under Strickland, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The relevant inquiry is not what defense counsel could have done, but whether the choices counsel made were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). In evaluating the reasonableness of counsel's actions, a reviewing court must consider the circumstances at the time of counsel's conduct and cannot "second-guess" counsel's decisions or view them under the "fabled twenty-twenty vision of hindsight." Edwards v. Lamarque, 475 F.3d 1121, 1127 (9th Cir. 2007) (en banc) (internal quotation and citations omitted).

Normally, under AEDPA, the question before a federal court on habeas appeal is not whether counsel's performance was so deficient as to meet the Strickland standard; instead, it is a more nuanced inquiry: whether the state court's application of the Strickland standard was unreasonable. See Richter, 562 U.S. at 101; id. at 105 (citing Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)) (noting that, where there has been a state court decision rejecting a Strickland claim on the merits, review is "doubly" deferential).

Here, the government contends that the California Court of Appeal previously denied a subset of Campbell's current IAC claims on the merits.[6] See Response to Petitioner's Traverse and Request for Evidentiary Hearing to Resolve Procedural Issues (dkt. 95) at 6–7 (citing Resp. Exs. 15, 16). To the extent the state court reached the merits of Campbell's IAC claims,[7] this Court conducts an independent Strickland review to determine whether the

---

[6] The government argues that the California Court of Appeal rejected on the merits the following subclaims of Claim 3 in the instant petition: Subclaims 8, 13, 23, and 27—all pertaining to counsel's alleged IAC at trial. See Response to Petitioner's Traverse and Request for Evidentiary Hearing to Resolve Procedural Issues (dkt. 95) at 6–7 (citing Resp. Exs. 15, 16); Pet. at 56, 58, 61–62 of 148.

[7] Where, as here, there is no opinion for the state court's ruling, "a habeas court must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent

**United States District Court**
For the Northern District of California

state court's decision was objectively unreasonable under AEDPA. Alternatively, to the extent the state court might not have reached the merits of an IAC claim, the Court reviews that claim de novo.[8] The difference between these alternative standards is inconsequential here; the Court concludes that all of Campbell's IAC claims fail under Strickland, thus it need not consider these claims under the additional layer of AEDPA deference.

Campbell's IAC claims generally fall into three categories: IAC at the preliminary hearing, IAC at trial, and IAC on appeal. Because she cannot show deficient performance or prejudice under Strickland, Campbell fails to meet her burden for habeas relief on the grounds of IAC.

### 1.      Preliminary Hearing IAC Subclaims

In Claim 3, Campbell maintains that trial counsel rendered ineffective assistance at the preliminary hearing for the following reasons.

### a.      Failure to object to Amended Information

Campbell contends that trial counsel was constitutionally ineffective when he "fail[ed] to object to [the] Amended Information, which increased counts 2 and 3 from assaults with a deadly weapon to attempted murders." Pet. at 53 of 148, Claim 3, Preliminary Hearing Subclaim ("PHS") 1.

When assessing deficient performance, the Court "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, a habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient. See Burt v. Titlow, 134 S. Ct. 10, 17 (2013); Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir. 1990). The absence of evidence that counsel gave constitutionally inadequate advice cannot overcome the

---

with the holding in a prior decision of this Court." Richter, 562 U.S. at 102 (emphasis added).

[8] "Any distinction [between these two forms of review] is academic . . . because petitioner's claim fails under either standard of review." Gipson v. Kirkland, No. CV 03-6242 VAP JC, 2011 WL 1253841, at *19, n.15 (C.D. Cal. Jan. 18, 2011) report and recommendation adopted, No. CV 03-06242 VAP JC, 2011 WL 1253760 (C.D. Cal. Mar. 25, 2011); see also Franklin, 290 F.3d at 1232 ("[A]ppeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.").

presumption that counsel's conduct fell within the range of reasonable professional advice. <u>See</u> <u>Titlow</u>, 134 S. Ct. at 17.

Here, Campbell does not explain, nor does the record reveal, the circumstances under which the counts were changed from assault to attempted murder.  <u>See</u> CT 3–4 (parties stipulate, on March 13, 2000, to reduce the counts from attempted murder to assault with a deadly weapon); <u>id.</u> at 114–15 (finding probable cause for assault charges at the preliminary hearing); <u>id.</u> at 117–19 (charging premeditated attempted murder for counts 2 and 3 in Amended Information, filed February 13, 2001).  The Court finds it possible—indeed likely—that counsel did not object to the Amended Information because he reasonably concluded that objecting would have been futile, given the evidence presented at the preliminary hearing.  <u>See</u> <u>id.</u> at 114 (finding sufficient evidence, at the end of the preliminary hearing, that, "[f]rom the time that [Sampson and Campbell] came into that house, they[] act[ed] in concert without any shadow of a doubt, and the conduct of one is attributed to the other").  Moreover, the jury ultimately found Campbell guilty on those counts beyond a reasonable doubt.  <u>Id.</u> at 252–56.  If counsel so reasoned, he need not have made a frivolous objection.  <u>See</u> <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996) (finding counsel's performance not deficient for failing to take futile actions).  The Court thus finds that counsel was not constitutionally deficient in forbearing objection.

Campbell has also failed to show prejudice—that, but for counsel's failure to object, the result of the trial would have been different.  <u>Strickland</u>, 466 U.S. at 694.  Because the Court finds that counsel did not perform deficiently in this instance, there can be no prejudice.  <u>See</u> <u>id.</u> at 687 (emphasis added) (to merit habeas relief "the defendant must show that <u>the deficient performance</u> prejudiced the defense.")

### b.    Failure to contest Campbell's arrest

Campbell argues that counsel "fail[ed] to pursue F.B.I. special agents' improper procedure in [her] arrest/seizure . . ., in violation of her Fourth, and Ninth Amendment rights."  Pet. at 53 of 148, Claim 3, PHS 2.

United States District Court
For the Northern District of California

Conclusory allegations not supported by a statement of specific facts do not warrant habeas relief.  James v. Borg, 24 F.3d 20, 26 (9th Cir.1994); Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995);  see also Rule 2(c)(2) of the Rules Governing § 2254 Cases (requiring a habeas corpus petition to "state the facts supporting each ground [for relief]").  Campbell has not stated what evidence counsel should have used to substantiate her assertion that she was arrested or seized in violation of her constitutional rights.  The record, by contrast, shows that she was arrested pursuant to a federal arrest warrant.  Resp. Ex. 10 (dkt. 53-2), Reporter's Transcript at ("RT") 1054–55, 1060, 1064, 1075, 1082.[9]  Counsel could have reasonably concluded that contesting Campbell's arrest would have been a useless endeavor.  See Rupe, 93 F.3d at 1445 (no deficient performance for failing to take futile actions).  Campbell thus fails to meet her burden in establishing deficient performance.

For the same reason, Campbell cannot show prejudice: her conclusory allegations do not explain how contesting her presumptively valid arrest could have afforded her a more favorable result at trial.  See Styers v. Schriro, 547 F.3d 1026, 1030 n.5 (9th Cir. 2008) (citing Kimmelman, 477 U.S. 365, 390–91 (1986)) ("Generally, a defendant claiming [IAC] for failure to file a particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome in the entire case").

### c.    Failure to move to suppress Campbell's personal items

Campbell contends that counsel failed to alert the court that, incident to her arrest, federal agents unlawfully seized her personal property and mail.  Pet. at 53–54 of 148, Claim 3, PHS 3.  Such property, she argues, was inadmissible at trial.

Assuming without deciding that federal agents seized Campbell's personal property in violation of her Fourth Amendment rights, counsel could have reasonably concluded that moving to suppress the seized items, even if successful, would have been both futile and counterproductive.  Although Campbell does not enumerate the alleged unlawfully seized

---

[9] For brevity, all future references to "Resp. Ex. 10, RT" are denoted simply as "RT" and are followed by the cited page number.  For example, page 1054 of the Reporter's Transcript will be cited as "RT 1054."

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

items, the Court surmises that Campbell refers to her purse and its contents (credit cards and a letter), which her housemate provided in response to federal agents' request for identification. <u>See</u> RT 1065–69, 1073. These items were useful to the prosecution and law enforcement to the extent that they were cumulative evidence of Campbell having lived under an assumed identity—a fact not in contention. <u>See</u> RT 1058, 1078–79, 1086–87. As such, Counsel could have made an informed tactical decision that contesting the admissibility of these items would have been a worthless endeavor and would not have ingratiated himself with the court. <u>See</u> <u>Rupe</u>, 93 F.3d at 1445; <u>Noriega v. Biter</u>, No. SACV 11-1226-GW JPR, 2013 WL 3733443, at *33 (C.D. Cal. July 15, 2013) (citing <u>Stanley v. Schriro</u>, 598 F.3d 612, 636 (9th Cir. 2010)) ("Capable lawyers evaluate not only what they ought to do, but what they ought not to do. Where action on behalf of a client has a considerable likelihood of backfiring, they avoid it."); <u>Richter</u>, 562 U.S. at 109 ("There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"). Campbell does not demonstrate the harm—if any—resulting from the admission of this evidence, much less meet her burden of showing prejudice. Her conclusory allegations fail to persuade the Court that counsel's assistance was ineffective or prejudicial.

See <u>James</u>, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

### d.     Failure to suppress Campbell's interrogation

Campbell alleges that counsel was ineffective in failing notify the court of a federal agent's coercive interrogation of Campbell at the time of her arrest and booking. Pet. at 54 of 148, Claim 3, PHS 4. This subclaim is conclusory and without support in the record. The record shows that, at the time of Campbell's arrest and booking, a federal agent asked Campbell routine questions to ascertain her identity. <u>See</u> RT 1078–80. The federal agent was not required under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), to have sought a waiver from Campbell of her Fifth Amendment rights. <u>See</u> <u>United States v. Washington</u>, 462 F.3d 1124, 1132 (9th Cir. 2006) ("[R]outine gathering of background biographical information, such as identity, age, and address, usually does not constitute interrogation [under

United States District Court
For the Northern District of California

Miranda]").  Defense counsel could have reasonably decided not to seek suppression of this evidence because a motion to that effect would have been denied.

Beyond her identity, a fact not in dispute, the only additional information the agent obtained from Campbell was her assertions that she had done nothing wrong and did not know why she was in custody.  See RT 1078–80.  Defense counsel could reasonably have calculated that these statements were useful to Campbell given their exculpatory nature; alternatively, he could have reasonably concluded that a suppression motion would have been denied because Campbell's statements would have been admissible to impeach her testimony were she to admit later that she was on the run.  Because counsel is not required to make futile motions, Campbell fails to show either deficient performance or prejudice.  See Rupe, 93 F.3d at 1445.

e.      **Failure to introduce preliminary hearing transcripts at trial**

In her last preliminary hearing subclaim, Campbell contends that counsel "erred in not requesting that the preliminary hearing transcripts and pertaining documents be introduced during trial."  Pet. at 54 of 148, Claim 3, PHS 5 (emphasis omitted).

The absence of evidence that counsel was constitutionally inadequate cannot overcome the presumption that counsel's conduct fell within the range of reasonable professional advice.  See Burt v. Titlow, 134 S. Ct. at 17.  This subclaim is conclusory and vague.  Campbell does not identify any document or portion of the preliminary hearing transcript that would have been useful to her at trial; as such, the Court is left with no evidential basis from which to evaluate counsel's alleged deficiency.  Moreover, to the extent that the preliminary hearing transcripts contained hearsay, they would not have been admissible at trial in the first place.  See Cal. Evid. Code § 1200; Cannedy v. Adams, 706 F.3d 1148, 1163 (9th Cir. 2013) amended on denial of reh'g, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S. Ct. 1001 (2014) ("[A] failure to introduce evidence that is clearly inadmissible cannot be prejudicial, because there is no chance that the jury ever would have heard that evidence.").

United States District Court
For the Northern District of California

### 2. Trial IAC Claims

In Claims 3, 5, 7, and 20, Campbell maintains that trial counsel rendered ineffective assistance at trial for the following reasons.[10]

#### a. Failure to investigate the crime scene and surrounding area

Campbell alleges that counsel was deficient in failing to investigate the crime scene and surrounding area. Pet. at 54 of 148, Claim 3, Trial Subclaim ("TS") 1.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. See Strickland, 466 U.S. at 691; Hinton v. Alabama, 134 S. Ct. 1081, 1088 (2014) (per curiam); Pinholster, 131 S. Ct. at 1407. Strickland directs that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 691). Counsel need not pursue an investigation that would be fruitless or might be harmful to the defense. Richter, 562 U.S. at 108.

Here, assuming that counsel did not in fact investigate the crime scene and surrounding area,[11] Campbell fails to specify what counsel might have found had he done so. Given that the trial occurred almost a decade after the crime, counsel could have reasonably concluded that conducting such an investigation would have been fruitless, if not difficult and costly. Campbell, 2003 WL 464068, at *1–2. Campbell has not made a showing that such an investigation would have led to useful evidence, and thus cannot overcome the "heavy measure of deference" this Court must accord counsel's judgment. Strickland, 466 U.S. at 491. She thus fails to meet her burden on deficient performance and prejudice.

#### b. Failure to present defenses of intimate partner battering syndrome, third party guilt, and transferred intent

In TS 2, and again in Claim 5, Campbell contends that counsel was deficient in failing to hire an expert on "Battered Woman's Syndrome and victim/survivor of domestic

---

[10] For efficiency's sake, the Court analyzes Claims 5, 7, and 20 together with their substantive equivalents in Claim 3 of Campbell's petition—respectively, Trial Subclaims 2, 9, and 22.

[11] Counsel did refer to visual depictions of the crime scene. See, e.g., RT 1394–97.

14

United States District Court
For the Northern District of California

violence," who "could make [a] determination of [Campbell's] mental state" and testify at trial. Pet. at 55 of 148, Claim 3, TS 2-A; see also Pet. at 70–71 of 148, Claim 5.

The lack of evidence of deficient performance precludes relief. See Titlow, 134 S. Ct. at 17. Failure to investigate a mental health defense is not deficient unless the habeas petitioner can show that counsel had reason to know that petitioner's mental health might be impaired. See Hoffman v. Arave, 455 F.3d 926, 932 (9th Cir. 2006), judgment vacated in part on other grounds by Arave v. Hoffman, 552 U.S. 117 (2008) (per curiam); see also Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (decision not to pursue testimony by a psychiatric expert is not unreasonable where the evidence does not raise the possibility of a strong mental state defense). Campbell has made no such showing here. She provides no evidence that she was in fact suffering from battered women's syndrome (now called "intimate partner battering syndrome" per In re Walker, 147 Cal. App. 4th 533, 537 (2007)) at the time of the murders, much less that counsel had been on notice of this possibility. Moreover, a defense based on this theory would have been at odds with Campbell's testimony that she did not have a gun and did not shoot the victims. See RT 1095, 1165–66; see also Doe v. Woodford, 508 F.3d 563, 569 (9th Cir. 2007) ("[T]rial counsel made a reasonable strategic choice to rely on petitioner's claims of innocence and decided not to pursue further investigations into petitioner's mental state since he testified that a mental state defense would have been inconsistent with the theory of the case."); Knowles v. Mirzayance, 556 U.S. 111, 124–27 (2009) (noting that counsel has wide discretion in making tactical decisions, such as the abandonment of inconsistent or unsupported defenses). Campbell thus fails to meet her burden in showing deficient performance.

To establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that such testimony created a reasonable probability that the jury would have reached a more favorable verdict. See Alcala v. Woodford, 334 F.3d 862, 872–73 (9th Cir. 2003). Here, Campbell merely speculates that a mental health expert "could" have made a determination about her mental state and testified in her defense at trial.

Pet. at 55 of 148, Claim 3, TS 2-A.  Such speculation fails to satisfy the <u>Alcala</u> standard.  <u>See</u> <u>Gonzalez v. Knowles</u>, 515 F.3d 1006, 1015–16 (9th Cir. 2008) ("As to the failure to investigate mental health mitigation, Gonzalez does not contend that he actually suffered from a mental illness; he merely argues that <u>if</u> tests had been done, and <u>if</u> they had shown evidence of some brain damage or trauma, it <u>might have</u> resulted in a lower sentence.  Such speculation is plainly insufficient to establish prejudice.").

Campbell further argues in TS 2 that counsel was ineffective in denying her a defense of third party guilt.  Specifically, she asserts that counsel failed to follow up on "Jewell Sutton's testimony that she saw an unknown party at the time of shooting" and Campbell's own testimony that a man named Buster was "at [the] scene, and shooting [the] UZI."  Pet. at 55 of 148, Claim 3, TS 2-B.  But Campbell does not say what counsel should have done beyond introducing this evidence at trial.  Moreover, the record belies her assertion that counsel did not advance the third-party theory: in fact, counsel argued that Campbell's testimony regarding Buster was consistent with the location of the Uzi casings.  RT 1400–01, 1413, 1420, 1424, 1434, 1440.  Campbell thus fails to show deficient performance and prejudice.

In Claim 5, Campbell contends that counsel was deficient in failing to present a defense of transferred intent.  Pet. at 70–72 of 148, Claim 5.  But transferred intent is not a defense; rather, it is an alternative theory for proving criminal liability.  <u>See</u> <u>People v. Bland</u>, 28 Cal. 4th 313, 317 (2002) ("[T]he doctrine of transferred intent applies when the defendant intends to kill one person but mistakenly kills another.  The intent to kill the intended target is deemed to transfer to the unintended victim so that the defendant is guilty of murder.").  Thus counsel could not have been deficient for failing to raise an irrelevant—or potentially harmful—argument.

### c.    Failure to retain a ballistics expert

Campbell argues that defense counsel "[f]ailed to obtain [a] defense ballistics expert, and crime lab to investigate [and] to identify [the] slugs that were found to be unidentifiable

by prosecutor's ballistic[s] expert, and crime laboratory." Pet. at 56 of 148, Claim 3, TS 6 (emphasis omitted).

But given that the prosecution was unable to identify the slugs, counsel could have reasonably decided not pursue the matter further. Taking this tack, he could avoid the possibility of uncovering harmful—or equally inconclusive—evidence, opting instead to cast doubt on the prosecution's case. See Richter, 562 U.S. at 108 ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); id. (noting that counsel had reason to question the truth of his client's account of events; pursuing forensic evidence could have exposed his client's story as fabrication). Moreover, because Campbell has not provided a declaration from a ballistics expert, the argument that counsel's omission affected the result of the trial is mere speculation. See Alcala, 334 F.3d at 872–73; Gonzalez, 515 F.3d 1006 at 1015–16.

### d.     Failure to obtain transcript of Campbell's admission and challenge its admissibility

Campbell contends that counsel "neglect[ed] to obtain [a] defense transcript of [Campbell's] admission, [] to request an audibility hearing with [the] Court, and to challenge [the] voluntariness and/or admissibility of [Campbell's] admission." Pet. at 55 of 148, Claim 3, TS 3 (emphasis omitted). Campbell testified that she freely and voluntarily waived her rights. RT 1190–92, 1245–47. Counsel thus was not deficient because he need not have filed a futile motion challenging the admissibility of this statement. See Rupe, 93 F.3d at 1445. Moreover, to the extent that counsel was deficient in not obtaining a transcript or requesting an audibility hearing, Campbell has not shown how this prejudiced the result at trial. See Strickland, 466 U.S. at 694.

### e.     Failure to prepare Campbell to testify

Campbell argues that counsel "did not adequately prepare [her] to take [the] stand, and testify taking the totality, and gravity of the charges into consideration." Pet. at 56 of 148, Claim 3, TS 4 (emphasis omitted). She raises an equivalent claim regarding counsel's alleged failure to prepare her for cross-examination in TS 30. Id. at 64. But Campbell does

United States District Court
For the Northern District of California

not specify what additional preparation was necessary, and how such preparation would have affected the result of the trial.[12]  She thus fails to meet her burden in showing deficient performance and prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### f.        Failure to object to judge's provision of exhibits to jurors

Campbell contends that counsel failed to "object to [the] [j]udge's decision to provide [the] jury with all exhibits in [the] deliberation room, while deliberating (including jury instructions) without a request from [the] jury."  Pet. at 56 of 148, Claim 3, TS 5 (emphasis omitted).  She makes equivalent assertions in TS 29.  See id. at 64.  Both claims fail because, for one thing, California law permits the jury to take evidence and instructions into the deliberation room, Cal. Penal Code § 1137, subject to the trial court's "sound discretion," People v. Walker, 150 Cal. App. 2d 594, 603 (1957).  As such, Counsel could have made an informed tactical decision that an objection would have been a worthless endeavor and might have alienated the jury.  See Rupe, 93 F.3d at 1445; Stanley, 598 F.3d at 636.  Campbell thus fails to show deficient performance and prejudice.

### g.        Failure to object to mug shot

Campbell argues that counsel failed to object to her mug shot being used to identify her in court.  Pet. at 56 of 148, Claim 3, TS 7.  The record shows, however, that counsel did in fact object to this photo's admissibility at the end of the trial.  RT 1308–11.  The court then ordered the prosecution to redact the portion of the picture showing her arrest number, leaving the date stamp uncovered, and admitted the picture.  RT 1310.  Assuming without deciding that counsel was deficient in failing to object to the picture's earlier use in identifying Campbell at trial, Campbell fails to show any prejudice resulting from this use.  Campbell testified that she had been arrested in 1991, the date printed on the picture.  Any adverse inference based on the mug shot would have been cumulative of this testimony.  RT 1172–73, 1311.  Moreover, prior to closing argument, the judge ruled that the prosecution

---

[12] In fact, Campbell testified that defense counsel played her previous statement to her during a jail visit.  RT 1190–91.  In TS 30, regarding preparation for cross-examination, Campbell admits that counsel "reinstructed" her and provided her with tips for answering the prosecutor's questions.  Pet. at 64 of 148, Claim 3.

could not refer to her 1991 arrest.  RT 1310.  Campbell thus fails to show how, absent the mug shot's use at trial, the result of the proceedings would have been different had counsel persisted in his objection.  See Strickland, 466 U.S. at 694.

### h.   Failure to introduce victim's dying statement

Campbell claims that counsel was deficient in failing to introduce the victim's dying statement that Sampson shot her.  Pet. at 56 of 148, Claim 3, TS 8; Petitioner's Ex. D (dkt. 1); Petitioner's Brief Re Merits and Motion to Amend Petition ("PBM") at 3–5.  But counsel could have reasonably determined that introducing the victim's dying declaration was outweighed by its potential harm to Campbell's defense.  For one thing, the declaration comes from an officer's gruesome report of the victim's state upon his arrival at the crime scene:

> I continued through the room and could see Johnson on the floor bleed [sic] from the face.  On contact, I asked who did this, Johnson slowly replied "Carl" [Sampson] in a disfigured voice.  She tried to give me more info but her voice became muffled and confused.  As I tried to gather her info she laid her face back down to the floor.  She was now bleeding excessively from a bullet hole in the lower nose area.

Petitioner's Ex. D.  Counsel could reasonably have wanted to avoid gruesome and potentially harmful descriptions of the victim's attempts to speak while bleeding from the face, given the availability of other evidence signaling Sampson's capability.  Such evidence includes Jewel Sutton testimony that the victim said, "I'm not dead yet, Carl.  I'm not dead yet" after being shot, suggesting that Carl was the shooter.  RT 869.  On cross examination of Sutton, counsel elicited Andrea's "I'm not dead yet, Carl" statement twice and prompted Sutton to clarify that Andrea was not referring to Campbell.  RT 1003.  Counsel also used this testimony in his closing argument.  RT 1433.  Campbell thus cannot overcome the Court's strong presumption that counsel's actions stemmed from reasonable trial strategy.[13]  See Stanley, 598 F.3d at 636; Richter, 562 U.S. at 109 ("There is a 'strong presumption' that counsel's

---

[13] Campbell argues that, because no one saw who fired the shots that actually killed Johnson, a reasonably competent attorney would have offered the victim's dying statement as evidence.  PBM at 4–5.  But a difference of opinion as to trial tactics does not constitute denial of effective assistance.  See United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981).  Tactical decisions are not ineffective assistance simply because, in retrospect, better tactics are known to have been available.  See Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer

2  neglect.'"). Campbell also fails to show prejudice. Although the identity of the person who

3  actually shot the victim was a contested issue in the case, the prosecution alternatively

4  theorized that Campbell aided and abetted the supposed actual killer, Sampson. See, e.g., RT

5  1380–81. Thus the victim's statement was not necessarily exculpatory; had counsel admitted

6  this evidence, there is a strong possibility that it would not have yielded a more favorable

7  result.

### i.      Failure to impeach prosecution witnesses

9  Campbell contends that counsel failed to impeach Jewell Sutton and Michael Ward,

10  both of whom she says committed perjury. Pet. at 56–57 of 148, Claim 3, TS 9. She makes

11  equivalent allegations in Claim 7, in which she contends that these witnesses' contradictory

12  statements "were substantially damaging, and prejudiced [her]." Id. at 76–77. These claims

13  are conclusory. Campbell does not identify the witnesses' alleged instances of perjury, nor

14  does she explain how impeachment would have affected the outcome of the trial. By

15  contrast, the record shows that counsel cross-examined Ward and Sutton extensively.[14] See

16  RT 803–22, 824–25, 882–1005, 1011–40, 1045–47. Campbell's lack of evidentiary support

17  precludes a finding of deficient performance and prejudice. See James, 24 F.3d at 26;

18  Strickland, 466 U.S. at 694.

### j.      Failure to object to introduction of firearms and gun video

20  Campbell argues that counsel failed to object to "[the] gun video being shown in

21  court, to [the] jury, which included weapons that were not a factor in this case." Pet. at 57 of

22  148, Claim 3, TS 10 (emphasis omitted). In a later subclaim, she alleges that counsel failed

23  to object to the introduction of firearms as evidence. Pet. at 60 of 148, Claim 3, TS 21.

24  These claims are conclusory. Campbell does not explain the basis on which counsel should

25  have objected to the firearms and video, nor does she explain how the video was harmful to

26  her—much less how it affected the jury's verdict. Counsel in fact argued that the video was

---

[14] During cross examination, counsel elicited Ward's admission that he did not see Campbell with a gun or hear her say anything during the offenses. See RT 818, 820, 825. Counsel also played portions of Sutton's taped police statement to impeach her testimony. See RT 1018–28.

United States District Court
For the Northern District of California

1    favorable to the defense because it showed the manner in which shells eject from an Uzi.  RT

2    1434–37.  Contrary to Campbell's contention, this suggests that counsel executed a

3    reasonable trial strategy.  See Richter, 562 U.S. at 109.  Thus Campbell's lack of evidence in

4    support of her claims precludes a finding of deficient performance and prejudice.  See James,

5    24 F.3d at 26; Strickland, 466 U.S. at 694.

6                **k.       Failure to introduce Sutton's statement in its entirety**

7        Campbell contends that counsel neglected to introduce Jewell Sutton's first taped

8    statement, and failed to object when the prosecution introduced an edited version.  Pet. at 57

9    of 148, Claim 3, TS 11.  But Campbell fails to explain the relevance of the omitted portion.

10   Moreover, the record shows that counsel and the prosecutor agreed not to play the full

11   recording in the interest of time.  Resp. Ex. 1008–10.  The Court presumes, as it must, that

12   this decision was strategic.  Richter, 562 U.S. at 109.  Campbell's lack of evidence in support

13   of her claim precludes a finding of deficient performance and prejudice.  See James, 24 F.3d

14   at 26; Strickland, 466 U.S. at 694.

15               **l.       Waiving Campbell's presence during transcript readback**

16       Campbell claims that, without her knowledge, counsel waived her presence for a

17   requested re-reading of testimony during jury deliberations.  Pet. at 56 of 148, Claim 3, TS

18   12.  The readback, Campbell contends, should have occurred in open court, with her having

19   the opportunity to be present.  Id.

20       "[T]he presence of a defendant is a condition of due process to the extent that a fair

21   and just hearing would be thwarted by his absence, and to that extent only."  United States v.

22   Cazares, 788 F.3d 956, 970 (9th Cir. 2015) (quoting United States v. Gagnon, 470 U.S. 522,

23   526 (1985)); see also id. at 967 (quoting Kentucky v. Stincer, 482 U.S. 730, 745 (1987) ("[A]

24   defendant is guaranteed the right to be present at any stage of the criminal proceeding that is

25   critical to its outcome if his presence would contribute to the fairness of the procedure.").

26   Campbell was present at the hearing in which counsel waived her—as well as counsel's

27   own—presence and counsel allowed the court reporter to read portions of the record to the

28

United States District Court
For the Northern District of California

jury in the jury room.[15]  RT 1553–54.  Thus, despite her assertions, she was presumptively aware of the waiver.  Counsel likely calculated that neither his nor his client's presence was required, and that Campbell's absence had no bearing on her ability to receive a fair and just hearing.  See Stincer, 482 U.S. at 745 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106–07) ("[The] privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'").  Campbell thus fails to show that counsel's waiver of her presence at the transcript readback was unreasonable or affected the outcome of the trial.  Campbell's lack of evidence in support of her claim precludes a finding of deficient performance and prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### m.      Failure to call witnesses

Campbell argues that counsel failed to call witnesses who could have substantiated the following facts: Carl Sampson was dangerous, abusive, and in control of Campbell; Campbell and Sampson did not live together, having dissolved their relationship in 1990; Campbell had plans to attend a business dinner on the night of the shooting with her then-present boyfriend; Campbell did not tell Sampson that the victim and Jewell Sutton were at Claude Lovett's house.  Pet. at 58–59 of 148, Claim 3, TS 13.  She further states that "witnesses were available to testify including Carl Sampson who was in custody at the time . . . ."  Id., at 59.  Campbell later alleges, in TS 27, that Sampson could have testified that Campbell did not tell him about the victims' whereabouts.  Pet. at 62 of 148, Claim 3, TS 27.

A defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance.  See Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended, 253 F.3d 1150 (9th Cir. 2001).  With the exception of Sampson, Campbell does not identify any new witnesses who could have substantiated her claims.  Moreover, to the extent that the additional witnesses would have provided helpful information, Campbell's assertions amount to speculation.  Counsel could reasonably have made a strategic choice in not calling certain witnesses to the stand, including Sampson, because those witnesses would have provided harmful or cumulative testimony.  See

---

[15] The readback occurred the next morning and lasted approximately two hours.  CT 255.

**United States District Court**
For the Northern District of California

1    Pinholster, 563 U.S. at 131 (2011) (quoting Strickland, 466 U.S., at 689–90) ("Strickland

2    specifically commands that a court 'must indulge [the] strong presumption' that counsel

3    'made all significant decisions in the exercise of reasonable professional judgment.'").

4    Given Sampson's involvement in the shooting, for example, he may have been reluctant to

5    help Campbell even if he possessed exculpatory information about her.  Absent a declaration

6    from these witnesses detailing the substance of their testimony, Campbell has not met her

7    burden in showing that counsel was deficient in failing to call them.  See James, 24 F.3d at

8    26; Strickland, 466 U.S. at 694.

9         Even if counsel had satisfied her burden of showing deficient performance, she cannot

10   show prejudice.  To establish prejudice from the failure to call a witness, a petitioner must

11   show that the witness was likely to have been available to testify, the witness would have

12   given the proffered testimony, and the witness's testimony created a reasonable probability

13   that the jury would have reached a verdict more favorable to the petitioner.  Alcala, 334 F.3d

14   at 872–73.  Here, Campbell has not provided a declaration from any witnesses substantiating

15   the facts as she sees them, nor has she demonstrated the likelihood that, had those witnesses

16   testified, the jury would have reached a different verdict.

17                    **n.    Failure to request certain jury instructions**

18        Campbell lists five jury instructions that she argues counsel should have requested,

19   but did not.  Those instructions concern her good character, third-party guilt, "Battered

20   Woman's Syndrome," "Victim/survivor of Domestic Violence," and "Transferred Intent."

21   Pet. at 59 of 148, Claim 3, TS 14.  Notably missing from Campbell's subclaim is the

22   proposed language of these allegedly missing instructions, how they apply in her case, and

23   how their absence prejudiced her conviction.  With such conclusory allegations, Campbell's

24   lack of evidence to support this claim precludes a finding of deficient performance and

25   prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

26        A criminal defendant is entitled to adequate instructions on the defense's theory of the

27   case, where such instructions are supported by the evidence.  See Conde v. Henry, 198 F.3d

28   734, 739 (9th Cir. 1999) (finding error in denying defendant's request for instruction on

simple kidnaping where such instruction was supported by the evidence).  Trial counsel's failure to request a particular instruction is not unreasonable where counsel presents its theory of the case to the jury, the general instructions cover that theory, and counsel's closing argument places the defense before the jury.  See Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir. 2000) ("The evidence, the general instruction, and counsel's closing argument, including his examples and his emphasis on common sense, put the issue squarely before the jury.").

Here, counsel reasonably did not request an instruction on transferred intent because an instruction would have harmed Campbell by giving the jury an alternate theory under which to convict her.  See supra Section III(A)(2)(b).  Moreover, because the Court finds that Campbell has not sufficiently established that she was a victim of domestic violence, counsel acted reasonably in not requesting a separate instruction regarding "Battered Woman's Syndrome" and "Victim/survivor of Domestic Violence."  See supra Section III(A)(2)(b).

Petitioner testified about her background, Sampson's prior violence against her, and Buster's alleged presence at the scene.  RT 1095–1275.  The jury instructions given were adequate to support the defense's theory of the case.  CT 199–226.  In closing argument, counsel noted that Campbell had never been in trouble, that Sampson had previously abused her and forced her to go to the scene, and that the evidence supported Campbell's testimony that Buster shot the victims.  RT 1395–1443.  To the extent that Campbell's hypothetical instructions bear on the question of her actual innocence, the jurors naturally considered them when evaluating her culpability.  Thus counsel was not deficient in neglecting to request additional instructions.

Even if counsel had been deficient, the omission of an instruction is less likely to be prejudicial than a misstatement of the law.  See Walker v. Endell, 850 F.2d at 475–76 (citing Henderson v. Kibbe, 431 U.S. at 155).  A habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'"  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Kibbe, 431 U.S. at 155).  Because Campbell offers no

United States District Court
For the Northern District of California

1  explanation for how counsel's failure to request additional jury instructions affected her

2  conviction, she is not entitled to habeas relief.

### o.  Failure to present mitigating evidence

4  Campbell claims that counsel "[d]id not present . . . mitigating factors so that jurors

5  would know that [Campbell] did not have a criminal background or history, and that she was

6  a law-abiding citizen."  Pet. at 59 of 148, Claim 3, TS 15 (emphasis omitted).  Finding this

7  conclusory subclaim without merit, the Court notes that it is also without support in the

8  record.  Counsel presented Campbell's testimony about her background, and pointed out in

9  his closing argument that Campbell had "never been in any trouble" and that there was "no

10  indication of any criminal record or involvement."  RT 1406.  Campbell's lack of evidence in

11  support of her claim precludes a finding of deficient performance and prejudice.  See James,

12  24 F.3d at 26; Strickland, 466 U.S. at 694.

### p.  Failure to appear in court

14  Campbell claims that counsel was constitutionally deficient for failing to appear for a

15  pre-trial meeting on November 13, 2000.[16]  Pet. at 59 of 148, Claim 3, TS 16.  The clerk's

16  transcript shows that counsel requested a continuance until the following day.  CT 131.

17  Critically, neither Campbell nor the record offer any indication, much less evidence, that

18  counsel's absence had an adverse effect on Campbell's trial.  Campbell thus fails to meet her

19  burden in showing prejudice.  Strickland, 466 U.S. at 694.

### q.  Failure to challenge three separate gun-use enhancements

21  Campbell alleges that counsel failed to challenge three separate gun-use enhancements

22  at sentencing.  Pet. at 59 of 148, Claim 3, TS 17.  Campbell's lack of evidence in support of

23  this conclusory claim precludes a finding of deficient performance and prejudice.  See James,

24  24 F.3d at 26; Strickland, 466 U.S. at 694.  Furthermore, Campbell's subclaim is

25  controverted by the record: counsel was not deficient because he in fact argued for

26  concurrent sentencing based on the jury's finding that Campbell did not use a weapon.  RT

---

28  [16] The Petition states that the missed appearance occurred on November 30, citing to page 131 of the clerk's transcript.  Because this page of the transcript indicates that the missed appearance actually occurred on November, 13, 2000, the Court construes the Petition accordingly.

1573.  Campbell also cannot show prejudice because the court ultimately sentenced her to concurrent sentences on all of the arming enhancement allegations.  RT 1580–81.

### r.        Failure to provide letter to probation officer

Campbell contends that counsel "failed to provide a letter to [her probation officer] to accompany [the probation officer's] letter to the [c]ourt."  Pet. at 60 of 148, Claim 3, TS 18. Assuming without deciding that counsel was deficient in this respect, Campbell fails to show in non-conclusory terms how such a letter could have influenced her result at trial.[17]  See Strickland, 466 U.S. at 694.

### s.        Failure to provide appellate project with questionnaire

Campbell argues that counsel failed to provide "the 'appellate project' with [a] completed questionnaire which would have been crucial in [the] 'project's' selection of court-appointed appellate counsel, and would have provided specific case information that was unique to this particular case."  Pet. at 60 of 148, Claim 3, TS 19.  This subclaim is conclusory because it fails to specify what information defense counsel should have provided to the "appellate project" in the questionnaire, and how counsel's alleged failure to provide this information prejudiced the result of her appeal.  See Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying the familiar two-pronged Strickland test to ineffective assistance of counsel on appeal); Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).  Campbell's lack of evidence in support of this claim precludes a finding of deficient performance and prejudice. See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### t.        Failure to object to prosecutor's prejudicial comments

Campbell contends that counsel failed to object "to [the] prosecutor's prejudicial comments, []misstatements of evidence (and law), during opening statement, closing statement, and rebuttal."  Pet. at 60 of 148, Claim 3, TS 20.  This subclaim is conclusory because Campbell does not specify the alleged prejudicial comments and misstatements to which effective counsel might have objected.  Campbell's lack of evidence in support of this

---

[17]  Such a showing of prejudice might prove impossible given both Campbell's ineligibility for probation, and her having received the shortest possible sentence for a first degree murder conviction under California law.  See Cal. Penal Code § 190.

claim precludes a finding of deficient performance and prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### u.        Damaging opening statement

Campbell claims that counsel's "opening statement was arrogant, and damaging to [Campbell], in that, by his ignorance he inferred [sic] his lack of confidence in [Campbell's innocence."  Pet. at 60 of 148, Claim 3, TS 22.  She makes equivalent allegations in Claim 20.  Id. at 127–29.

"The timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of [IAC]."  United States v. Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985) (citing United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985).  Here, counsel's decision to make a concise opening statement is within his discretion. Moreover, Campbell's assertion that counsel conveyed a lack of confidence in her case is speculation, and otherwise refuted by the record.  In his opening statement, counsel admitted that he did not know what happened, and therefore was calling the one person who was in the room, Campbell, "besides the Hispanic gentleman" who was available to explain what happened.  Respondent's Merits Brief, Ex. 16 (dkt. 99-1), RT 1094.  He conveyed his lack of confidence in the prosecution's witnesses and introduced Campbell as the most credible observer of the events.  Id.  Thus, Campbell's lack of evidence in support of this claim precludes a finding of deficient performance and prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### v.        Failure to communicate withdrawal from case

Campbell asserts that counsel "[f]ailed to communicate his withdrawal from [Campbell's] case prior to [the] court appearance of Mr. Harrison who then became [Campbell's] representing counsel."  Pet. at 61 of 148, Claim 3, TS 23 (emphasis omitted).

Campbell fails to show prejudice.  On May 16, 2001, Mr. Harrison appeared on Campbell's behalf.  CT 257; RT 1564.  The court advised Campbell that a substitution of counsel would be required:

United States District Court
For the Northern District of California

1  I want to make sure you're comfortable with this decision.  It's not an
2  irrevocable decision.  You can always get another attorney.  I want to make
   sure you're comfortable.  If you want to take some more time before you
3  allow Mr. Harrison to come in as your attorney after seeking another
   counsel, that's entirely up to you.

4  RT 1564–65.  Campbell elected to retain Mr. Harrison and, at her request, the court

5  continued sentencing for two months.  RT 1565; CT 260.  Given that Campbell had two

6  months in which to find a different attorney if she so wished, and Mr. Harrison had two

7  months in which to familiarize himself with her case, Campbell does not show any harm

8  resulting from counsel's failure to communicate his withdrawal.  Because her conclusory

9  claim fails to show prejudice, it does not merit relief.  See Strickland, 466 U.S. at 694.

10                 **w.    Stipulation to Carl Sampson's murder conviction**

11         Campbell contends that counsel erred in stipulating to Carl Sampson's murder

12  conviction.  Pet. at 61 of 148, Claim 3, TS 24.  She alleges that the stipulation was deceptive

13  because it implied that Sampson was convicted of first-degree premeditated murder when, in

14  fact, he was convicted of second-degree murder.  Id. (citing RT 1316); PBM at 6.

15         Campbell's conclusion that the parties' stipulation created a false impression in jurors'

16  minds is speculation.  The court read the following into evidence: "Parties have stipulated

17  that Carl Sampson was convicted on April 22nd, 1993, of murder and related charges

18  stemming from the shooting that occurred on December 14th, 1991, at 831 Isabella."  RT

19  1316.  The words "first-degree" and "premeditation" do not appear in the cited passage.

20  Even if the stipulation gave rise to an improper inference, counsel could reasonably have

21  relied on the jury instructions to counteract such an inference.  See Velazquez v. City of

22  Long Beach, 793 F.3d 1010, 1029 (9th Cir. 2015) (quoting Richardson v. Marsh, 481 U.S.

23  200, 211 (1987)) ("[J]uries are presumed to follow their instructions.").  Here, the court

24  instructed the jury that "before an inference essential to establish guilt may be found to have

25  been proved beyond a reasonable doubt, each fact or circumstance on which the inference

26  necessarily rests must be proved beyond a reasonable doubt"; and later, the instructions said

27  that "if the evidence as to any specific intent or mental state permits two reasonable

28  interpretations, one of which points to the existence of the specific intent or mental state and

28

**United States District Court**
For the Northern District of California

the other to its absence, you must adopt that interpretation which points to its absence."  CT 202–03.  Campbell thus fails to show, in non-conclusory terms, how counsel's stipulation was deficient or prejudicial.  See United States v. Ferreira-Alameda, 815 F.2d 1251, 1254 (9th Cir. 1987) ("[C]ounsel's stipulation to evidentiary facts does not necessarily demonstrate incompetency of counsel"); James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### x.    Stipulation to Mahaney's crime scene findings

Campbell alleges that counsel "[d]id not object to stipulation of [evidence technician] Mahaney's [critical] crime scene findings, and evidence, in absentia, at [the] preliminary hearing."  Pet. at 61 of 148, Claim 3, TS 25 (emphasis omitted).

Campbell fails to show deficient performance or prejudice.  At the preliminary hearing, and for preliminary examination only, counsel stipulated that Mahaney would testify that he gathered the evidence and could identify the photographs taken at the crime scene. CT 100–01.  Because Mahaney ultimately testified at trial, Campbell has not shown how counsel's stipulation at the preliminary hearing was unreasonable or affected the outcome of the case.  See RT 434–81.  Habeas relief, therefore, is inappropriate.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### y.    Failure to obtain statements from jurors after trial

Campbell faults counsel for not obtaining statements from jurors after trial "to provide needed information for a determination [of whether] the jury committed jury misconduct." Pet. at 62 of 148, Claim 3, TS 26.  Campbell fails to show ineffective assistance.  Without a declaration from a juror showing that misconduct occurred, her claim amounts to speculation and is not entitled to relief.  See Bragg, 242 F.3d at 1087 (mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance); Alcala, 334 F.3d 862, 872–73 (9th Cir. 2003) (prejudice requires a showing that the witness would have given the proffered testimony and that the testimony creates a reasonable probability that the jury would have reached a more favorable verdict).

//

//

### z.    Failure to challenge federal agents' seizure and interrogation

Campbell reasserts elements of her previous claims, namely, that counsel failed to challenge the lawfulness of federal agents' seizure of her property, person, and interrogation. Pet. at 63 of 148, Claim 3, TS 28.  Because this subclaim is cumulative of other claims that this Court found without merit, namely PHS 2–4 and TS 3, it fails for the same reasons.  See supra Sections III(A)(1)(b)–(d), III(A)(2)(d).

### aa.    Failure to review jury instructions

Campbell contends that counsel failed to review the oral and written jury instructions. Pet. at 64 of 148, Claim 3, TS 31.  This subclaim fails because it is conclusory and refuted by the record.  Counsel discussed jury instructions with the prosecutor and court before those instructions were read to the jury.  RT 1318–40.  Campbell's lack of evidence in support of this claim precludes a finding of deficient performance and prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### bb.    Conflict of interest

Campbell seeks leave of the Court to add a new claim, styled "Claim 26," to her habeas petition. PBM at 10–14.  In this claim, which Campbell asserts that the state court rejected on the merits, id. at 12, she contends that counsel's failure to disclose his state bar disciplinary proceedings, which were ongoing during his representation of Campbell, as well as his post-verdict resignation from the state bar,[18] constituted constructive denial of counsel such that prejudice is presumed under United States v. Cronic, 466 U.S. 648 (1984), id. at 13. Had counsel disclosed these proceedings to her, Campbell maintains, she would have insisted on obtaining new representation.  Id. at 11.  Campbell argues in the alternative that, in light of the presumed prejudice, she should only have to show counsel's "defective performance" per Cuyler v. Sullivan, 446 U.S. 335 (1980).  Id. at 13.  The requisite defective performance, she argues, arises from "the 34 specific instances of [IAC] alleged in [the instant] petition,"

---

[18] Campbell asserts that counsel was "disbarred shortly after [the] verdict," whereas her habeas counsel's declaration and supporting exhibit reveal that he in fact resigned from the state bar. Declaration of Erik Babcock in Support of PBM (dkt. 104-1) at 2;  Petitioner's Ex. A (dkt. 104-2).

United States District Court
For the Northern District of California

1    and "are attributable to the conflict caused by trying a murder case while simultaneously

2    facing disciplinary proceedings from the State Bar." Id.

3         Assuming without deciding that Claim 26 has been fairly presented and exhausted in

4    state court, and is otherwise properly before this Court, the Court nonetheless denies this

5    claim because it is without merit.[19]  Under Cronic, prejudice is presumed "where assistance

6    of counsel has been denied entirely or during a critical stage of the proceeding." Mickens v.

7    Taylor, 535 U.S. 162, 166 (2002) (citing Cronic, 466 U.S. at 658–59). "[O]nly in

8    'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's

9    inadequate performance undermined the reliability of the verdict." Id. (quoting Cronic, 466

10   U.S. at 659 n.6). "Circumstances of such magnitude may 'arise when the defendant's

11   attorney actively represented conflicting interests.'" Earp v. Ornoski, 431 F.3d 1158,

12   1182–83 (9th Cir. 2005) (quoting Mickens, 535 U.S. at 166); see also Alberni v. McDaniel,

13   458 F.3d 860, 870 (9th Cir. 2006) (quoting Mickens, 535 U.S. at 171) (citation omitted)

14   ("[T]he Sixth Amendment does not protect against 'a mere theoretical division of loyalties.'

15   Rather, it protects against conflicts of interest that adversely affect counsel's performance.").

16   Here, Campbell has not identified a "critical stage" of the proceedings during which

17   assistance of counsel had been denied to her "entirely."  She likewise has not identified an

18   actual conflict of interest that adversely affected counsel's performance.

19        The Supreme Court in Mickens cautioned against expanding application of Sullivan to

20   cases that do not involve an actual conflict based on concurrent representation: "the language

21   of Sullivan itself does not clearly establish, or indeed even support, such expansive

22   application . . . . Both Sullivan itself [ ] and Holloway[20] [ ] stressed the high probability of

23   prejudice arising from multiple concurrent representation, and the difficulty of proving that

24   prejudice.  Not all attorney conflicts present comparable difficulties." Id. at 1184 (quoting

25   Mickens, 535 U.S. at 175) (alternations in original); see also id. (alterations in original) ("The

26

27        [19] A federal court may deny a petition on the merits even if it is unexhausted. See 28 U.S.C.
     § 2254(b)(2); Franklin, 290 F.3d at 1232.

28
          [20] Holloway v. Arkansas, 435 U.S. 475 (1978).

**United States District Court**
For the Northern District of California

Mickens Court specifically and explicitly concluded that Sullivan was limited to joint representation, and that any extension of Sullivan outside of the joint representation context remained, 'as far as the jurisprudence of [the Supreme Court was] concerned, an open question.'"). In Earp, the Ninth Circuit expressly refused to apply Sullivan to other ethical conflicts because, under the confines of AEDPA review, "the Supreme Court has not spoken to this issue and has expressly limited its constitutional conflicts jurisprudence." 431 F.3d at 1185.

This Court must follow Earl. Campbell does not identify—nor is this Court aware of—a clearly established Supreme Court precedent expanding Sullivan to alleged conflicts in which counsel faced concurrent state bar disciplinary proceedings during trial. Thus, here, the state court could reasonably have concluded that prejudice need not be presumed under Cronic or Sullivan. See 28 U.S.C. § 2254(d) (permitting habeas relief only where the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States); see also Clark, 331 F.3d at 1069; Taylor, 529 U.S. at 412–13. Moreover, to the extent this Court has determined that Campbell's "34 instances of ineffective assistance" fail under Strickland, they cannot serve as the predicate for defective performance—i.e., evidence of an actual conflict under Sullivan. PBM at 13.

### 3.    Appellate Counsel IAC

Campbell argues that appellate counsel was ineffective because he did not communicate to her the possibility of filing a writ of certiorari in the United States Supreme Court. Pet. at 133–34 of 148, Claim 22. She further contends that appellate counsel failed to review trial counsel's Statement of Trial Attorney Per Penal Code Section 1240.1 ("Trial Attorney Statement"), and to augment the record on appeal for effective review of her habeas claims. Id.; see also Petitioner's Ex. A (dkt. 1).

There is no constitutional right to an attorney in state post-conviction proceedings after exhaustion of direct appellate review; consequently, a habeas petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Pennsylvania v.

**United States District Court**
For the Northern District of California

Finley, 481 U.S. 551, 556–57 (1987); Coleman v. Thompson, 501 U.S. 722, 752–53 (1991); Hunton v. Sinclair, 732 F.3d 1124, 1126 (9th Cir. 2013) cert. denied, 134 S. Ct. 1771 (2014). The right to counsel, moreover, does not extend to applications for discretionary review in the Supreme Court.  Ross v. Moffitt, 417 U.S. 600, 617 (1974).  Thus, Campbell's claim that appellate counsel was ineffective for failing to advise her of the possibility of Supreme Court review is without merit.

Campbell's claim that appellate counsel failed to review the Trial Attorney Statement is conclusory because it fails to specify what claims appellate counsel should have raised or demonstrate that those claims had merit.  An " appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal."  Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001).  Lawyers have broad discretion in selecting only the most meritorious arguments when petitioning for habeas relief.  See Bailey v. Newland, 263 F.3d 1022, 1028–29 (9th Cir. 2001) (noting that the two Strickland elements overlap when evaluating appellate counsel IAC, and the weeding out of weaker claims is one of the hallmarks of effective appellate advocacy).  Campbell's lack of evidence in support of this claim precludes a finding of deficient performance and prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

Campbell's argument that appellate counsel rendered ineffective assistance by failing to augment the record on appeal is also conclusory.  She fails to specify any missing records that were material to her appeal, and she does not explain how inclusion of those materials would have effected the result of her appeal.  Her lack of evidence precludes a finding of deficient performance and prejudice.  See James, 24 F.3d at 26; Strickland, 466 U.S. at 694.

### B.   Jury Instruction Regarding Attempted Premeditated Murder

Campbell argues that her attempted premeditated murder conviction must be reversed because the jury was not properly instructed on the requisite finding regarding her mens rea. Pet. at 136–41 of 148, Claim 23.  She contends that, "where the defendant is being prosecuted for attempted murder as an accomplice such as in this case . . . based on the natural and probable consequences doctrine . . . . [a] separate finding of premeditation and

United States District Court
For the Northern District of California

deliberation [is] required for the aider and abettor as to the penalty provision triggered by premeditation." Id. at 138–39 (citing Cal. Penal Code § 664(a)).

Instructional error can form the basis for federal habeas relief only if it "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Murray v. Schriro, 746 F.3d 418, 451 (9th Cir. 2014). "In making this determination, the jury instruction 'may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.'" Waddington v. Sarausad, 555 U.S. 179, 191 (2009) (quoting Estelle 502 U.S. at 72); see also Dixon v. Williams, 750 F.3d 1027, 1033 (9th Cir. 2014). Campbell bears "an especially heavy burden" in showing instructional error where, as here, the omission of an instruction is less likely to be prejudicial than a misstatement of the law. Villafuerte, 111 F.3d at 624 (quoting Kibbe, 431 U.S. at 155).

Campbell contends that the jurors were under the misapprehension that they "could find [Campbell] guilty of the enhanced punishment based solely on the mens rea of others." Pet. at 140 of 148 (emphasis added). "Failure to properly instruct the jury that it had to find that [Campbell] personally deliberated a premeditated murder," she contends, runs afoul of the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000). Id. at 141; see Apprendi, 530 U.S. at 490 (requiring that any fact increasing the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt). But Campbell's argumentOctober 10, 2015 lacks support in the record. As the state court noted on appeal, the trial court did instruct the jury on the requisite mens rea for accomplice liability: "[A] defendant can be found guilty as an aider and abettor if she '(1) [w]ith knowledge of the unlawful purpose of the perpetrator, and (2)[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime, and (3) [b]y act or advice[,] aids, promotes, encourages, or instigates the commission of the crime.'" Resp. Ex. 2 at 8 (alterations in original); Campbell, 2003 WL 464068, at *5; see also CT 212; RT 1516–19. Thus, contrary to Campbell's contentions, the trial court did not run afoul of

United States District Court
For the Northern District of California

Apprendi: it instructed the jurors of the requisite <u>mens rea</u> for conviction under accomplice liability theory.

The state court also found that, under state law, the trial court need not have instructed the jurors that convicting Campbell of attempted premeditated murder under an aiding and abetting theory requires they find that she <u>personally</u> premeditated and deliberated the attempted murders.  <u>Id.</u> at 9–10 (citing <u>People v. Laster</u> 52 Cal.App.4th 1450 (1997), which held that California Penal Code section 664, a penalty enhancement for attempted murder, applied to aiders and abettors); <u>Campbell</u>, 2003 WL 464068, at *6; <u>see also</u> <u>People v. Lee</u>, 31 Cal.4th 613, 621–22 (2003) (interpreting section 664(a) to require "only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor").  The failure to give an instruction not required under state law could not have "so infected the entire trial that the resulting conviction violates due process."  <u>See</u> <u>Estelle</u>, 502 U.S. at 72.

Given the above reasoning, this Court concludes that the state appellate court's decision rejecting Campbell's jury instruction claims was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts.  <u>See</u> 28 U.S.C. § 2254(d).

**C.     Sufficiency of the Evidence**

Campbell argues that the evidence was insufficient as a matter of law to convict her of murder. Pet. at 142–146 of 148, Claim 24.

State courts are presumed to know and follow the law.  <u>See</u>, <u>e.g.</u>, <u>Parker</u>, 498 U.S. at 314–16 (1991); <u>Clark</u>, 769 F.3d at 727.  In line with this presumption, a federal court on habeas review must employ a "highly deferential" standard of review that gives state court decisions the benefit of the doubt.  <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002) (<u>per curiam</u>).  To employ a different standard would compromise the states' power to punish offenders and the function of habeas corpus as a "guard against extreme malfunctions in the criminal justice system." <u>Jackson v. Virginia</u>, 443 U.S. 307, 332 n.5 (1979).  Where, as here,

35

a federal court reviews a state court's factual determinations, a "twice-deferential" standard applies because the role of the fact finder as weigher of the evidence must be preserved.  See Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012) (per curiam).

The first layer of deference requires a federal court to deny relief if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (quoting Jackson, 443 U.S. at 324).  Mere "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."  United States v. Jackson, 72 F.3d 1370, 1381 (9th Cir. 1995).  This highly deferential standard preserves the role of the jury as factfinder by prohibiting a federal court from weighing the evidence, drawing conclusions, or determining the credibility of witnesses.  See Jackson, 443 U.S. at 319.

The second layer of deference requires a federal court to deny relief unless it determines that the state court decision was "objectively unreasonable."  Parker, 132 S. Ct. at 2152.  "A federal court may not overturn a state court decision . . . simply because the federal court disagrees with the state court."  Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam).  Even if a federal habeas court concludes that the state court applied federal law incorrectly, it may not grant relief.  Williams v. Taylor, 529 U.S. 362, 410–11 (2000).  Rather, the defect in application of law or determination of the facts must rise to the higher level of "unreasonable."  Id.  In light of these two layers of judicial deference, this Court's inquiry is limited to the determination of whether the state court's application of federal law or determination of the facts was objectively unreasonable.

Here, the California Court of Appeal found sufficient evidence to support Campbell's conviction for murder as a direct perpetrator, assuming she was not an aider and abettor:

> The evidence presented at trial showed [Campbell] was angry at Sutton and Johnson because they had called the police.  [Campbell] had threatened Sutton telling her, "If you fuck people, you get fucked." [Campbell] went to Lovett's house on the night in question armed with a gun.  She actively participated in the incident, alerting Sampson to Johnson's presence toward the rear of the house.  The shots that killed Johnson were not fired by Sampson's Uzi.  According to Sutton, those shots sounded different from the shots that had been fired up to that point. The jury considering this evidence could reasonably conclude [Campbell] fired the fatal shots using the gun she carried.  We conclude the evidence

was sufficient to support the conclusion that [Campbell] was guilty of murder as a direct perpetrator.

[Campbell] contends that since the jury found she had not personally used a weapon, it could only find her guilty as an aider and abettor. However, the jury's finding on the use allegation does not mean we must evaluate the sufficiency of the evidence under an aider and abettor theory. The court addressed this precise issue in People v. Lopez, supra, 131 Cal.App.3d 565 . . . . There, the defendant was charged with several counts of assault with a deadly weapon and several enhancements for personal use of a weapon. The jury convicted the defendant on the assault charges but found the use allegations to be not true. On appeal, the defendant challenged the sufficiency of the evidence and argued, based on the use findings, that the court had to analyze the evidence under an aiding and abetting theory. The court framed the defendant's argument as follows: "Essential to this argument . . . is [the defendant's] theory that our examination of the verdicts may not be made on the basis that he was convicted as a principal, but only as an aider and abettor. He explains that our judicial perspective must be limited by the jury's inconsistency in finding him guilty of the offense of assault with a deadly weapon, but finding he was not personally armed with a weapon. In effect, he claims, the negative finding on the enhancement allegation is equivalent to a special verdict on the factual question of whether he personally used a firearm. Thus . . . we must revolve the threshold question which he presents. What is the legal effect of the inconsistency between the verdict on each of the offenses and the findings on the enhancements?" (Id. at p. 569, 182 Cal.Rptr. 563.) The Lopez court analyzed numerous cases holding that inconsistent verdicts are permissible. (Id. at p. 570, 182 Cal.Rptr. 563.) The court also discussed cases which recognize that juries frequently render verdicts that are at odds with the evidence. (Id. at p. 571, 182 Cal.Rptr. 563.) Based on those decisions, the Lopez court ruled: "The fact that the word 'enhancement' is used rather than 'offense' does not nullify the underlying rationale of refusing to invalidate an inconsistent jury verdict if it is otherwise supported by substantial evidence. In so holding, we are in line with most authorities who even absent statutory authorization have upheld convictions on some counts irrespective of their rational incompatibility with acquittal on other counts. (citation omitted) Accordingly, we are not limited to [the defendant's] proffered theory in our examination of the sufficiency of the evidence." (Id. at p. 571, 182 Cal.Rptr. 563.)

Here, as in Lopez, we are not limited to analyzing the sufficiency of the evidence under an aiding and abetting theory, even though the jury found the use allegation to be not true. [Campbell's] argument, based on that assumption, must fail.

Resp. Ex. 2, 6–8; Campbell, 2003 WL 464068, at *4–5.

The state court's conclusion that it may analyze the sufficiency of the evidence under the theory that Campbell was a direct perpetrator, even though the jury found the gun use allegation not to be true, is not an unreasonable application of clearly established Supreme Court authority. See Kyzar v. Ryan, 780 F.3d 940, 950 n.2 (9th Cir. 2015) (quoting United States v. Powell, 469 U.S. 57, 67 (1984)) ("[S]ufficiency of the evidence review 'should be

United States District Court
For the Northern District of California

1  independent of the jury's determination that evidence on another count was insufficient'")

2  cert. denied, U.S. Oct. 5, 2015.

3       Furthermore, the Court disagrees with Campbell's contention that there was no

4  evidence to support her having killed Andrea Johnson with premeditation and deliberation.

5  In her recitation of events, Campbell resolves disputed facts in her favor.  This is not the

6  standard of review on habeas appeal.  Moreover, Campbell does not contend that the state

7  court's recitation of the facts is without support in the evidence.  Thus, even if there had been

8  no "direct evidence" establishing Campbell as the shooter, as Campbell contends, this would

9  not preclude a rational trier of fact—viewing the evidence, including circumstantial evidence,

10 in the light most favorable to the jury verdict—from concluding beyond a reasonable doubt

11 that she was a direct perpetrator.  PBM at 7.

12      This Court concludes that the state court's determination that sufficient evidence

13 supported Campbell's first degree murder conviction as a direct perpetrator was not an

14 objectively unreasonable determination of the facts, nor was it an objectively unreasonable

15 application of clearly established Supreme Court law.  See 28 U.S.C. § 2254(d).

16      **D.    Cumulative Error**

17      Campbell argues finally that her claims cumulatively deprived her of her due process

18 rights.  Pet. at 147–48 of 148, Claim 25.  Another incarnation of this claim appears among

19 her IAC subclaims.  Id. at 63, Claim 3, TS 27.  Because Claim 25 incorporates her IAC

20 claims, the Court considers Claim 25 and TS 27 together.

21      Cumulative error violates due process principles and warrants habeas relief only

22 "where the errors have 'so infected the trial with unfairness as to make the resulting

23 conviction a denial of due process.'"  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007)

24 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Furthermore, cumulative

25 error applies only where no single error is sufficiently prejudicial but the effect of multiple

26 errors compound the impact.  See Alcala, 334 F.3d at 893–95.  Where "there is no single

27 constitutional error . . ., there is nothing to accumulate to a level of constitutional violation."

28 Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002); see Hayes v. Ayers, 632 F.3d 500,

United States District Court
For the Northern District of California

525 (9th Cir. 2011) (holding that where no error reaches constitutional magnitude on habeas review, no cumulative error is possible).  In Campbell's case, where this Court has found that counsel was not constitutionally deficient, there can be no error to accumulate.

In exceptional cases, the Ninth Circuit has held that, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several trial errors might prejudice a defendant so much that his conviction must be overturned.  See Alcala, 334 F.3d at 893–95.  This is not such an exceptional case.

Cumulative error is more likely to be found prejudicial where the prosecution's case is weak.  See United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996).  In cases where the Ninth Circuit has found cumulative error, such errors were substantial.  See, e.g., id. (prejudice resulting from cumulative effect of improper vouching by prosecutor, improper comment by prosecutor about defense counsel, and improper admission of evidence previously ruled inadmissible required reversal even though each error evaluated alone might not have warranted reversal).

Here, Campbell fails to establish prejudice in any of her claims.  The Court, in its judgment, finds that whatever harm that could have resulted from counsel's alleged errors and omissions—even in the aggregate—is minimal.  There is no comparison to Frederick here: this is not a case "where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Parle, 505 F.3d at 927 (quoting DeChristoforo, 416 U.S. at 643).  Moreover, the prosecution's case, considered in the light most favorable to the jury verdict, was compelling.  See supra Section III(C).  Thus Campbell's claim for cumulative error is without merit.

## IV.   CONCLUSION

After a careful review of the record and pertinent law, the Court is satisfied that the petition for a writ of habeas corpus must be DENIED.[21]  Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C.

---

[21] The Court does not reach the procedural default question; instead, it is denying Campbell's Petition on the merits.  See supra Section I; Franklin, 290 F.3d at 1232.

§ 2253(c) also is DENIED because Campbell has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The clerk shall enter judgment in favor of Respondent, terminate all pending motions as moot, and close the file.

**IT IS SO ORDERED.**



Dated: September 30, 2015

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California